AUSAs: Marguerite B. Colson, Alexandra N. Rothman

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | 25 MAG 3696 |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GÖKÇE GÜVEN,<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 1343 & 2;<br>15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R.<br>§ 240.10b-5<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

THOMAS KOVACS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Wire Fraud)

1. From at least in or about 2023 through at least in or about May 2025, in the Southern District of New York and elsewhere, GÖKÇE GÜVEN, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, GÜVEN engaged in a scheme to defraud investors in Kalder, Inc. by making false and misleading statements to current and prospective investors regarding Kalder's revenue, finances, and business partnerships in order to obtain money from those investors and by thereafter misappropriating investor funds, and sent and received, and caused others to send and receive, electronic communications or financial wires to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 & 2.)

## COUNT TWO
### (Securities Fraud)

2. From at least in or about 2023 through at least in or about May 2025, in the Southern District of New York and elsewhere, GÖKÇE GÜVEN, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and of the facilities of national securities exchanges, used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice and course of

business which operated and would operate as a fraud and deceit upon a person, to wit, GÜVEN engaged in a scheme to defraud investors and prospective investors in Kalder, Inc. by making false and misleading statements regarding Kalder's revenue, finances, and business partnerships in connection with the sale of equity interests in Kalder, Inc. and by thereafter misappropriating investor funds.

(Title 15, United States Code Sections 78j(b), 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.    I have been personally involved in the investigation of this matter. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part.

### GÜVEN Raised More Than $10 Million For Kalder

4.    For the reasons that follow, I believe that GÖKÇE GÜVEN, the defendant, fraudulently induced others to invest in Kalder, Inc., a business that she founded, and then misappropriated investor funds. Specifically, based on my participation in the investigation of this matter, my conversations with other law enforcement agents, my review of documents and other records, and law enforcement interviews with various involved individuals, including a former employee of Kalder ("Witness-1"),[1] I have learned, in substance and in part, the following:

    a.    In or about 2022, GÜVEN announced the launch of Kalder. According to Kalder's website and GÜVEN's public statements, Kalder was the "world's first fully customizable partner rewards platform for brands of all sizes." Kalder's model was to embed cash-back and rewards programs directly into clients' websites, allowing the clients' customers to earn rewards automatically when shopping at partner brands. GÜVEN served as the founder and Chief Executive Officer of Kalder. Kalder's offices are located in Manhattan, New York.

    b.    Between in or about 2022 and in or about 2024, GÜVEN raised approximately $10.5 million for Kalder, through a $3.5 million seed financing round in 2022 and a subsequent $7 million financing round in August 2024. GÜVEN provided investors with equity interests in Kalder in exchange for cash. In soliciting these equity investments, GÜVEN made a series of false statements and misrepresentations regarding Kalder's revenue, clients, and business partnerships.

---

[1] Witness-1 has voluntarily provided information to law enforcement, including to the United States Securities and Exchange Commission (the "SEC"). Witness-1 has expressed an intention to seek a whistleblower reward from the SEC, if Witness-1 becomes eligible for such an award, which creates a financial incentive for Witness-1 to identify and substantiate allegations of wrongdoing. I and other law enforcement officers have found Witness-1 to be reliable and corroborated by, among other things, documentary evidence and bank records.

c.   Specifically, beginning in or about 2023, GÜVEN falsely represented to prospective and current investors that Kalder's annual recurring revenue ("ARR")—a commonly used metric for projecting future revenue streams—had grown from $250,000 to over $1.5 million. GÜVEN also falsely represented that Kalder's monthly revenue figures were nearly $100,000. In truth, and as GÜVEN knew, until in or about April 2025—months after Kalder had closed its second fundraising round—Kalder had earned only $60,000 in revenue in total.

d.   For example, in or about April 2024, GÜVEN solicited an investment from a Manhattan-based venture capital fund. GÜVEN electronically transmitted to the potential investor, among other things, a spreadsheet of Kalder's "pipeline" of anticipated clients. The venture capital fund asked GÜVEN to add "top line figures to the pipeline file," as well as for the "status of [a] contract" with a particular retailer, which had been "listed at $42.5k in the ARR file." GÜVEN emailed the pipeline spreadsheet to a member of Kalder's sales team with the directive to "add top line figures in this pipeline and make it add to more than 15m+," noting that "it has to add to more than 15m ARR." GÜVEN then emailed the venture capital fund that "top line figures added – this [] does not include customers that are not close to finish line so you will see a short-term list that comes to $15m+." GÜVEN further represented to the potential investor that Kalder had signed "separate [] UK and [] US contracts" with the retailer. According to Witness-1, these representations were false. The venture capital fund did not invest in Kalder.

e.   In or about August 2024, GÜVEN launched Kalder's second financing round. In soliciting investments, GÜVEN emailed prospective investors an investor deck that falsely represented that Kalder had 53 brands in "live freemium" (that is, 53 brands using the basic Kalder services free of charge), 26 paying brands, and $1.2 million in ARR as of June 2024. A California-based investment firm led the August 2024 financing round and invested $3.5 million in Kalder (the "Lead Investor").

f.   The Lead Investor introduced GÜVEN to other potential investors, several of which also invested in Kalder. In late August 2024, for instance, following an introduction from the Lead Investor, GÜVEN solicited an investment from another venture capital fund ("Investor-2"). GÜVEN emailed Investor-2 a copy of Kalder's investor deck, noting that the deck was "a bit outdated" because Kalder's ARR was approximately $1.5 million, rather than the lower figure in the deck. GÜVEN also emailed Investor-2 a spreadsheet of financials for Kalder, which falsely reported that Kalder's monthly revenues grew from over $25,000 in December 2023, to nearly $100,000 by August 2024. Further, according to notes of a call between GÜVEN and Investor-2, GÜVEN represented that Kalder's "bookings" placed the company's ARR closer to $2 million than $1.2 million. Investor-2 invested approximately $150,000 in Kalder. Around the same time, GÜVEN made similar misrepresentations to another venture capital fund ("Investor-3"), which invested approximately $500,000 in Kalder based, at least in part, on GÜVEN's false statements and misrepresentations.

g.   By in or about 2024, GÜVEN had generated significant publicity based on Kalder's purported success. In December 2024, for instance, GÜVEN was named to *Forbes'* "30 Under 30" List for Marketing & Advertising. In the *Forbes* article announcing GÜVEN's accomplishments, *Forbes* reported that Kalder had 28 clients, 25,000 partnering merchants, and had brought in $1.5 million in revenue in 2024. As described above, those client, partnership and revenue numbers were false.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of GÖKÇE GÜVEN, the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

_____
Thomas Kovacs
Special Agent
Federal Bureau of Investigation

Sworn to before me this **21** day of November, 2025.

_____
THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York